# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs March 1, 2011

## STATE OF TENNESSEE V. DEMARIO THOMAS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-03938    James M. Lammey, Jr., Judge**

---

**No. W2010-00949-CCA-R3-CD  - Filed July 11, 2011**

---

The Defendant, Demario Thomas, pled guilty to second degree murder, a Class A felony, and the trial court sentenced him to twenty-three years in the Tennessee Department of Correction.  On appeal, the Defendant argues that the trial court's sentence is excessive. After a thorough review of the record and the applicable law, we modify the trial court's judgment to a sentence of twenty-one years in the Tennessee Department of Correction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Modified and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Vicki M. Carriker, Memphis, Tennessee, for the Appellant, Demario Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; Ray Lapone  and Paul Hagerman, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts
### A. Guilty Plea Hearing

This case arises from the Defendant's fatal shooting of the victim, Durell McVay. Based on this event, a Shelby County grand jury indicted the Defendant for first degree

1

murder, and, after the first day of his trial, he entered an *Alford*[1] plea to second degree murder. The following is a summary of the facts supporting the Defendant's guilty plea[2]: On August 14, 2007, a gang-related altercation occurred outside a gas station located across the street from Waldon Pointe Apartments in Memphis, Tennessee. While the Defendant was not present during this altercation, his younger brother, Donye Garrett, was present. During this altercation, Donye Garrett engaged in aggressive language and flashed gang signs to a group of men that included the victim. The gas station owner asked the men to leave and they complied. While this altercation was occurring, the Defendant was informed that his mother's apartment was being burglarized. After running to his mother's apartment armed with a weapon, he discovered that the apartment was not, in fact, being burglarized. Soon after he left his mother's apartment, his older brother, Michael Garrett, told him about the gas station altercation and also that Donye Garrett was at the apartment mailboxes alone.

Approximately twenty minutes later, the two groups of men from the gas station met in the apartment complex. Michael Garrett, the Defendant's older brother, and another man began to fight when the victim and several other men arrived. Donye Garrett and the victim engaged in some "words" and then prepared to fight but, before they could do so, the Defendant fired three shots at the victim. All of the men except for the victim, who was lying on the ground, fled the scene. Police were called, and the victim was transported to the hospital where he was pronounced dead. The following day the Defendant went to the homicide office of his own accord, initially denying he shot the victim but later offering an admission.

Based upon this evidence, the trial court accepted the Defendant's plea of guilty to second degree murder, with the agreement that the trial court would determine the length and manner of the Defendant's sentence after conducting a sentencing hearing.

### B. Sentencing Hearing

At the Defendant's sentencing hearing, the following evidence was presented: The parties agreed that the Defendant was a Range I offender. The State offered into evidence the Defendant's presentence report. The Defendant offered into evidence letters written on his behalf by his employer, family, and friends.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his "best interest," while maintaining his actual innocence of the crime.

[2] A transcript of the plea hearing was not included in the appellate record. We summarize the facts of the case based upon the trial transcript and the sentencing hearing transcript.

Sharon Coleman, the victim's mother, testified that, on the day of her son's murder, she was at home when her other son received a phone call from a friend who said the victim had been shot. Coleman went directly to the location of the shooting where she saw paramedics treating her son. Emergency personnel would not allow her near her son and instructed her to meet them at the hospital. Coleman recalled that, approximately twenty minutes after arriving at the hospital, she was informed her son had died.

Coleman testified that, two years before the victim's death, her oldest son was killed by gang members as he was walking his stepsister home. Coleman said that her oldest son's death was a random act, not targeted at him, and that the victim's death was more difficult for her to understand because the Defendant intended to kill the victim. After the victim's death, Coleman had difficulty sleeping, so she began taking sleeping pills and was forced to take time off from work. Coleman said that since the victim's death she has not wanted to bathe or get out of bed, and she has had problems with her younger son "rebelling." Noting that the Defendant shot her son three times in his back, Coleman asked the sentencing court to order the Defendant to serve the maximum sentence within the range.

The Defendant, twenty-six years old at the time of sentencing, testified that he did not have any prior criminal convictions or a prior juvenile record. The Defendant said he had two children, ages six and two. After release from incarceration, the Defendant said he wanted to return to school to become an x-ray technician. During his incarceration, the Defendant participated in a drug and alcohol program and a course on anger management.

The Defendant said that, before this incident, he had moved from Illinois to Memphis and moved into an apartment in the Waldon Pointe Apartment complex with his brother. He began working full-time at IPC security, and, on August 14, 2007, the Defendant slept in late because he had worked a double-shift the previous day. The Defendant recalled that his brothers were helping their mother move into an apartment that day. The Defendant was awakened by a neighbor knocking on the apartment door to tell the Defendant someone might be burglarizing his mother's apartment. The Defendant immediately dressed, grabbed a handgun, and went to his mother's apartment. The Defendant explained that he took a weapon because he "didn't know what to expect" and they were "rough apartments." The Defendant found there was no burglary and was returning to where he was staying when his older brother, Michael Garrett, told him that their brother, Donye Garrett, was involved in an altercation that had just taken place at the gas station across the street from the apartment complex. The Defendant learned that Donye Garrett was at the mailbox area of the apartment complex, so he and his brother Michael went to the mailboxes to make sure that Donye Garrett was alright. He said that, when they arrived, they found eight men arguing with Donye, who was alone. At some point, Michael Garrett began fighting with "a guy with some dreadlocks." When another man attempted to attack Michael Garrett from behind, the

3

Defendant stepped in, and the two men "tussled a little bit." As these fights broke up, a group of men came around the corner. The Defendant recalled hearing someone ask, "You all looking for me?", and when he turned to see who was speaking, he saw the victim armed with a gun. The Defendant said that another "dark-skinned guy" was carrying a gun and that a third man appeared to be reaching for a gun. The Defendant testified that, because this scared him, he "panicked - pulled the weapon out, [and] fired three shots as [he] was trying to run away."

The Defendant testified that, after running from the scene, he did not know if he had shot or killed anyone. He maintained that he did not have the handgun on his person with the intention to shoot the victim, insisting that he only used his gun when he saw the other men had guns and were coming toward him and his brothers. The next morning, the Defendant learned that someone had been shot and killed so he went to the police station. Initially, he lied to police because he was "scared." He said that he did not know "what to do or what to say." Several days later, police spoke with the Defendant about the shooting again, and this time he told them the truth.

The Defendant described how he felt about the shooting and the victim's death, saying "I be sad and depressed all the time. I pray for his mother a lot and my family. I'm sorry. The worst day of my life. I just was scared. A situation I wish I never been in."

On cross-examination, the Defendant said that, after he fled the shooting, he picked up his son and got into a car with his brothers. The Defendant admitted he did not have a gun permit and explained that he had received the gun about two weeks before the shooting. He explained that he felt unsafe when he moved back to Memphis from Illinois, so he obtained the gun from a friend.

Saqueena Easterwood testified that she had known the Defendant for over seven years. She described the Defendant as "loving," "fair," an "excellent father," and a "hard worker." She said that the Defendant had lived with her for over three years and that he was not in a gang and she never knew him to engage in a fight.

Taqueenia Horton testified that she and the Defendant had a child together and that she had known the Defendant for seven or eight years. Horton described the Defendant as the "sweetest man I ever met" and "a hard worker." She stated that the Defendant took "good care" of their son. She said that the Defendant was not a member of a gang and that the Defendant "must have been placed between a rock and a harder place because he's not just going to do nothing to hurt nobody. That's just not him."

Evelyn Scott, the Defendant's mother, testified that her son is "mild," respectful, and

4

a "gentle person." She acknowledged that her other sons are aggressive, but said that the Defendant would try to "separate himself" from trouble. She testified that the Defendant was not a member of a gang.

Tomiko Thomas, the Defendant's cousin, testified that when she first heard about the charges against the Defendant, she thought it must be a mistake. She explained that the Defendant did not fight, was a great father, and was a man who was trying to better himself. Thomas testified that she and the Defendant grew up together and that the Defendant was not a member of a gang.

After the Defendant presented his proof, the State announced that, after hearing the Defendant's family members and friends testify on his behalf, the victim's mother wished to withdraw her request for the maximum sentence and agreed with the State's recommendation of a twenty-year sentence.

At the conclusion of the hearing, the trial court sentenced the Defendant to serve twenty-three years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant claims that the trial court erred when it sentenced the Defendant without considering any mitigating factors and when it inappropriately applied enhancement factors. The State responds that the trial court imposed a sentence that is consistent with the purposes and principles of the Sentencing Act.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2009). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2009). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. Tenn. Code Ann. § 40-35-103 (2009); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001);

*State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2009); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, among others, when determining whether to enhance a defendant's sentence:

> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (3) The offense involved more than one (1) victim;
>
> . . . .
>
> (9) The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense;
>
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high; . . . .

T.C.A. § 40-35-114(2), (3), (9) and (10) (2009). If an enhancement is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2009). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e). Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2009). The 2005 amendments deleted as grounds for appeal, however, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement and mitigating factors, we can review the trial court's application of those factors. T.C.A. § 40-35-401(d) (2009); *Carter*, 254 S.W.3d at 343.

6

The Defendant, a Range I offender, was sentenced for second degree murder, a Class A felony, which has a sentencing range of fifteen to twenty-five years. *See* T.C.A. § 40-35-112(b)(5).

The trial court applied four enhancement factors: enhancement factor (2), that the Defendant was a leader in the commission of this offense which involved two or more actors; enhancement factor (3), that the offense involved more than one victim; enhancement factor (9), that the Defendant employed a firearm during the commission of this offense; and enhancement factor (10), that the Defendant had "no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114(2), (3), (9) and (10). The trial court considered mitigating factors and found none of the mitigating factors applicable to the Defendant's case. Based upon its findings, the trial court sentenced the Defendant to twenty-three years for the Class A felony conviction.

As we will explain in detail below, we conclude that the trial court applied two enhancement factors that are not applicable and did not consider applicable mitigating factors. As such, we review the Defendant's sentence de novo with no presumption of correctness. In conducting our de novo review of a sentence, we consider the same factors that the Tennessee Code instructs a trial court to consider during sentencing: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the offense, (5) any mitigating or enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses; and (7) any statements made by the defendant on his or her own behalf. *See* T.C.A. § 40-35-210 (2009); *State v. Herbert H. Foster*, No. W2007-02636-CCA-R3-CD, 2009 WL 275790, at *4 (Tenn. Crim. App., at Jackson, Feb. 3, 2009), *no Tenn. R. App. P. 11 application filed*.

### A. Enhancement Factors

The Defendant asserts in his brief that, "the trial court erred when it inappropriately applied enhancements to the Defendant's sentence." The Defendant argues that his Sixth Amendment right to a jury trial was violated because the trial court, rather than a jury, determined the enhancement factors in his case.

Initially, we note that the Defendant's reliance upon *Blakely v. Washington* is misplaced. *See Blakely v. Washington*, 542 U.S. 296 (2004). The Defendant correctly states that under the law prior to the 2005 amendments to our sentencing act, our Supreme Court had held that a trial court's enhancement of a defendant's sentence above the presumptive sentence on the basis of judicially determined facts, other than a defendant's prior

7

convictions or admissions, violated that defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007). However, the crime for which the Defendant stands convicted occurred in 2007, well after the enactment of the 2005 amendments. *See* T.C.A. § 40-35-210 (2006), Compiler's Notes.

The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our Supreme Court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." . . . . Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," . . . a punishment sufficient "to prevent crime and promote respect for the law," . . . and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]"

*Id.* (footnote and citations omitted).

Although we cannot consider the propriety of the trial court's weighing of enhancement and/or mitigating factors, we will now review the applicability of each of the enhancement factors applied by the trial court to the Defendant's sentence.

### 1. Enhancement Factor (2)

Enhancement factor (2) provides for consideration of whether a defendant is a leader in the commission of an offense that involves two or more criminal actors. As to this factor, the trial court made the following findings:

> [I]t appears to me that No. 2 would apply as well, I mean, there were multiple people involved in this, and it just so happens, he was the only one that was armed. So, he is definitely the No. 1 leader in this thing. I mean, he went there for the purpose of killing. I think he was a leader in the commission of the offense involving two or more criminal actors.

Our review of the record reveals that the Defendant was not present at the gas station where the hostile interaction between the two groups of men began, but that his younger brother was an "instigator" during this initial encounter. When the men met again in the apartment complex, however, the Defendant was present and armed, and he shot and killed the victim. There is no evidence in the record that the Defendant planned this encounter.

8

Moreover, there is no proof in the record that the Defendant directed the other men present to engage in the fight or that his brothers were criminal actors involved in the homicide who were being led by the Defendant. We recognize that enhancement factor (2) does not require the Defendant be the sole leader but rather that he be a "leader," and as a result both of two criminal actors may qualify for enhancement under this factor. *See State v. Hicks*, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). Under the facts of the present case, however, we agree with the Defendant that the evidence in this record does not suggest that he was a leader in the commission of the offenses according to Tennessee Code Annotated section 40-35-114(2). As such, the trial court improperly applied enhancement factor (2) to the Defendant's conviction.

## 2. Enhancement Factor (3)

The Defendant challenges the trial court's application of enhancement factor (3), that there were multiple victims to the offense. The trial court made the following finding as to enhancement factor (3):

> I think that this involved more than one victim. The poor lady that testified that her children were out there during this gun brawl - this gun- this slaying, it was a horrifying event. And she testified as to how frightened she was. So, I think she was a victim of an aggravated assault - or at least a reckless endangerment.

The Defendant asserts that the trial court considered "charges not indicted" by the grand jury, such as aggravated assault and reckless endangerment to bystanders, in imposing a sentence above the minimum in the sentencing range. The Defendant argues that, by so doing, the trial court "robb[ed] [the Defendant] of his ability to adequately prepare a defense for his case." The State concedes that the trial court misapplied enhancement factor (3) but not for the reasons the Defendant asserts. The State responds that, because the Defendant was convicted of an offense involving a named victim in the indictment, the trial court improperly applied enhancement factor (3). We agree with the State.

A victim is "a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." *State v. Raines*, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). It appears from the record that neither the witness nor her children had any physical contact with the Defendant during the commission of the crime, and no property was taken from them. No one was injured in the altercation other than the victim. We conclude that the record preponderates against the trial court's finding that there were multiple victims to this offense, and, therefore, that the trial court erred when it applied enhancement factor (3) to the Defendant's sentence. The evidence that the trial court relied

upon for enhancement factor (3), however, is evidence that supports the application of enhancement factor (10), which we will discuss in more detail later in our opinion.

## 3. Enhancement Factor (9)

Enhancement factor (9) allows for consideration of whether a defendant possesses or employs the use of a firearm, explosive device, or other deadly weapon during the course of the offense. As to this factor, the trial court made the following finding:

> Of course, he used a firearm in this, and the fact that if he were convicted today, he would get [an additional sentence] because that's what the law is - the state of the law now. So, you know, but for the fact that he just did this a few months earlier, this event having occurred on August 14th of '07, the law has since changed. He would get - so if I gave him fifteen years, he would still end up doing twenty-one. If I gave him twenty, he would still end up doing twenty-six. But I'm not going to really - I can't put any weight in that except for the fact that he did use a firearm.

The Defendant asserts that the trial court improperly enhanced his sentence based upon its belief that the Defendant would also have been charged with carrying or possession of a weapon had the offense occurred later in time. The State responds that, whereas the trial court did mention the new statute during sentencing, the record clearly reveals that it placed no weight on the potential additional weapon charge in applying this enhancement factor.

We agree with the State. The trial court stated that it could not "put any weight" on the possibility of an additional conviction had the offense occurred later in time. The trial court did properly consider as an enhancement factor the Defendant's employment of a weapon during this offense. Use of a firearm is not an element of second degree murder and, thus, is appropriate for consideration in determining the applicability of enhancement factor (9). *See State v. Raines*, 882 S.W.2d 376, 385 (Tenn. Crim. App. 1994). The Defendant is not entitled to relief as to this issue.

## 4. Enhancement Factor (10)

The Defendant challenges the trial court's application of enhancement factor (10), that "the defendant had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114(10). The "risk to human life" includes the risk to the lives of persons other than the victim who were present and could have been injured. *State v. Sims*, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995); *State v. Ruane*, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995). The evidence in the record supports the trial court's application of this

factor. The testimony both at trial and sentencing indicates there were at least ten people, other than the Defendant and the victim, present in the area during the shooting. The shooting occurred in the middle of the day in a residential apartment area near children playing outside. Therefore, there were other potential victims in the area subject to a high risk of death when the Defendant opened fire. The Defendant is not entitled to relief as to this issue.

In summary, the trial court appropriately applied enhancement factors (9) and (10) to the Defendant's conviction, but erred when it applied enhancement factors (2) and (3). Because of these errors, we review the Defendant's sentence de novo, with no presumption of correctness. The erroneous application of one or more enhancement factors by the trial court does not, however, necessarily lead to a reduction in the length of the sentence. *State v. Winfield*, 23 S.W.3d 279, 284 (Tenn. 2000).

### B. Mitigating Factors

The Defendant contends that the trial court failed to consider "any" of the mitigating factors, including factors (2), (3), (11), and (13) under Tennessee Code Annotated section 40-35-113. The State counters that the trial court considered mitigating factors that the Defendant proposed but either found they were inapplicable or assigned them a different weight than the Defendant desired.

As outlined above, the Sentencing Act requires this Court, in conducting its de novo review, to consider all mitigating factors applicable to the Defendant. *See* T.C.A. § 40-35-210; *Foster*, 2009 WL 275790, at *4. Section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "if appropriate for the offense." T.C.A. § 40-35-113 (2009). The list contains the following four mitigating factors that the Defendant argues apply to his sentence:

(2) The defendant acted under strong provocation;

. . . .

(3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

. . . .

11

(11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;

. . . .

(13) Any other factor consistent with the purposes of this chapter.

T.C.A. § 40-35-113(2), (3), (11) and (13). The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at * 6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996).

At the conclusion of the sentencing hearing, the trial court specifically rejected application of mitigating factors (2), (3), (11), and (13) and declined to apply any other mitigating factor.

### 1. Mitigating Factor (2): Strong Provocation

The trial court made the following finding as to mitigating factor 2 in this case:

I don't see where there was any provocation. There was no other proof that anyone else had a gun; certainly that no one else discharged a gun other than the [D]efendant here.

We agree with the trial court that the application of this mitigating factor was not supported by the evidence. The Defendant willingly went to an area where he knew his brother might be engaged in the continuation of an altercation that started at a nearby gas station. He testified that the victim and two other men approached with weapons; however, other testimony indicated that the Defendant was the only person with a weapon. Police did not recover any weapons at the scene or from the victim's body. These facts support the trial court's rejection of this mitigating factor.

### 2. Mitigating Factor (3): Grounds to Excuse or Justify Criminal Conduct

The trial court made the following finding as to mitigating factor 3:

Going through these, I don't see what the substantial grounds existed that tended to excuse or justify the [D]efendant's criminal conduct. They hunted these people down. They followed them from the store where this event

12

occurred; and they actively pursued them; and they picked up [the Defendant] along the way, who was one of the people doing the hunting - one of their brothers.

We agree with the trial court that the application of this mitigating factor was not supported by the evidence. The Defendant bases his assertion that the trial court should have applied this factor upon character witness testimony that he is not a violent person. The Defendant then asks this Court to make the conclusion based upon this testimony that, because the Defendant is "non-violent," substantial grounds must have warranted his aberrant behavior. We can make no such assumption. The record reveals that the Defendant went to a location in the apartment complex where he suspected there might be further interaction between the two rival groups. During this interaction, the Defendant pulled out a gun and shot the victim three times in the side and back. There is no testimony from the Defendant or other witnesses that the victim verbally threatened or addressed the Defendant directly. The Defendant maintains that the victim brandished a gun, however, as we noted above, other witnesses to the shooting indicated otherwise. As such, we conclude that the record does not support that substantial grounds existed that would have excused or justified the Defendant's shooting and killing of the victim and that, therefore, the trial court did not err when it refused to apply mitigating factor (3) to the Defendant's sentence. The Defendant is not entitled to relief on this issue.

### 3. Mitigating Factor (11): Unusual Circumstances

The Defendant contends that the trial court erred when it found this factor inapplicable because the Defendant would not have been involved in this fight had it not been for his brothers. Although this may be true, it does not establish that the circumstances of this case are "such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." T.C.A. 40-35-113(11). This shooting stemmed from a gang-related altercation. Even though the Defendant maintains he is not a gang member, it is clear from video footage of the initial altercation at the gas station that other persons involved in this interaction, namely the Defendant's brother, were gang members. The Defendant has not forwarded any theory in support of why these circumstances were so unusual as to afford him consideration of this factor to mitigate his sentence. The Defendant is not entitled to relief as to this issue.

### 4. Mitigating Factor (13): Other Factors

The Defendant contends the fact that he has no prior criminal or juvenile record, his employment, genuine remorse, and his rehabilitation as evidenced by his participation in classes and therapy while incarcerated all fall under mitigating factor (13), codified at

13

Tennessee Code Annotated section 40-35-113(13). Factor (13) is the "catch-all" of the statute, and it provides that a trial court may apply as a mitigating factor "any other factor consistent with the purposes of this chapter." "[M]itigating factor (13) is usually applied where the trial court found some condition of the defendant or some action or inaction by the defendant apart from the trial proceedings that necessitated leniency, but was not covered by the statute explicitly." *State v. Bobby Northcutt*, No. M2003-02805-CCA-R3-CD, 2004 WL 2266798, at *5-6 (Tenn. Crim. App., at Nashville, Oct. 7, 2004), *no Tenn. R. App. P. 11 application filed*.

At the sentencing hearing, the trial court addressed the Defendant's lack of a criminal record and rehabilitation but did not address any of the others factors the Defendant submitted for consideration under mitigating factor (13):

> Looking at mitigating factors, of course, he has no criminal - previous criminal record. That's the way everyone is supposed to be. Most people don't have a criminal record. The way you break into the criminal system, though, however - most people I would say is probably DUI or driving on a revoked [license]; but here [the Defendant] breaks into the criminal system by committing a murder; and it's evident it was gang related to me.
>
> . . . .
>
> And lastly, any other factor - no record - and that he did some things to help himself while he's been incarcerated such as anger management - things of that nature.
>
> Well, I think it's a day late and a dollar short. You don't get anger management after you kill someone for losing your temper and expect to get kudos for that. I would think that. I would think that if he had, perhaps, undergone anger management for this, this wouldn't have happened.

Each factor that the Defendant argues mitigates against his culpability has indeed been recognized as a subsection (13) consideration. First, our Supreme Court has held that the lack of a criminal history is an appropriate mitigator. *State v. Gutierrez*, 5 S.W.3d 641, 646 (Tenn. 1999). Similarly, consideration of a defendant's work history is consistent with the purposes and principles of the Sentencing Act. *State v. Kelly*, 34 S.W.3d 471, 482-83 (Tenn. Crim. App. 2000). This Court has also held that the defendant's genuine, sincere remorse is a valid factor (13) consideration. *See State v. Williamson*, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). Finally, a defendant's rehabilitation is a valid basis upon which to base factor (13). *See State v. James Dale Walker*, No. E2003-01372-CCA-R3-CD, 2004 WL 587638,

14

at *3 (Tenn. Crim. App., at Knoxville, Mar. 25, 2004), *no Tenn. R. App. P. 11 application filed*. Although not argued by the Defendant, in reviewing the sentence de novo, we would also note that a defendant's cooperation with police and guilty plea are proper bases for application of factor (13). *See State v. Jeffrey Brian Parks*, No. M2003-02002-CCA-R3-CD, 2004 WL 1936404, *5 (Tenn. Crim. App., at Nashville, Aug. 30, 2004), *no Tenn. R. App. P. 11 application filed*.

The trial court appears to have completely dismissed the Defendant's lack of a criminal history as a consideration for mitigation of the Defendant's sentence. As we have already stated, however, this is a proper factor for consideration. The record shows that the Defendant did not have an adult or juvenile criminal record. The Defendant's family and friends testifying on his behalf at the sentencing hearing said that the Defendant did not engage in criminal activity and was not a gang member. Thus, the record supports application of the Defendant's lack of criminal history as a mitigating factor in this case. In our view, however, this factor should receive little weight in light of the nature and circumstances of this particular crime.

The Defendant testified that, at the time of the incident, he had full-time employment as a security guard which he gained upon his return to Memphis from Illinois. A letter submitted from the Defendant's employer to the trial court described the Defendant as "dependable, responsible, honest, and curious" and spoke highly of the Defendant's work. The Defendant also supported his minor son. Based upon this evidence, we conclude that the record establishes that the Defendant was gainfully employed and contributing to the support of his child, both of which are mitigating factors under Tenn. Code Ann., section, 40-35-113(13).

The Defendant, during his sentencing hearing, accepted responsibility for the shooting and apologized to the victim's mother. Also, according to various witnesses who testified on the Defendant's behalf, the Defendant accepted responsibility for the shooting and demonstrated sincere remorse. The victim's mother, after listening to the Defendant's testimony and that of witnesses on his behalf, retracted her request for the trial court to order the Defendant to serve the maximum sentence and agreed with the State's recommendation of twenty years. Thus, in our view, the record establishes the Defendant's remorse as a mitigating factor under subsection (13). *See* T.C.A. § 40-35-113(13); *Williamson*, 919 S.W.2d at 83.

Also, the record establishes that the Defendant, at the time of the sentencing hearing, had sought rehabilitation through courses offered in jail. First, the record shows that the Defendant participated in anger management classes and moral recognition therapy. Further, the Defendant completed a Drug and Alcohol program. Thus, the Defendant showed that he

has sought rehabilitation through participation in available resources while incarcerated which is a mitigating factor under subsection (13). *See* T.C.A. § 40-35-113(13); *Walker*, 2004 WL 587638, at *3.

In conducting our de novo review of the Defendant's sentence, we will consider the Defendant's lack of a criminal history, his work ethic, remorse, and rehabilitation efforts as mitigating circumstances. *See* T.C.A. § 40-35-113(13).

## C. De Novo Review of Sentence

In conducting our de novo review of the Defendant's sentence, we consider the Defendant's presentence report, the victim impact letters and statements introduced during his sentencing hearing, the nature and circumstances of his crime, and the applicable enhancement and mitigating enhancement factors. *See* T.C.A. § 40-35-210.

Notwithstanding the trial court's misapplication of enhancement factors (2) and (3) to the Defendant's sentence, the trial court properly applied enhancement factors (9) and (10). As we have explained, however, the record shows that the Defendant's lack of a criminal record, work ethic, remorse, and rehabilitation efforts are applicable mitigating factors. In light of the applicable enhancement and mitigating factors and the nature and circumstances of the Defendant's crimes, we conclude that a modification of the Defendant's sentence is necessary. *See* T.C.A. § 40-35-210.

The trial court sentenced the Defendant as a Range I offender to twenty-three years, two years less than the maximum sentence, for his second degree murder conviction. *See* T.C.A. § 40-35-112(a)(1). Because the trial court improperly applied two enhancement factors and failed to apply several mitigating factors, we modify the Defendant's sentence to twenty-one years in the Tennessee Department of Correction.

## III. Conclusion

After a thorough review of the record and the applicable law, we modify the trial court's sentence from twenty-three to twenty-one years, and remand for entry of a judgment reflecting a sentence of twenty-one years, to be served in the Tennessee Department of Correction.

_____
ROBERT W. WEDEMEYER, JUDGE

16